**UNITED STATES of America,
Plaintiff,**

v.

**Howard CRASH, Defendant.**

**Nos. 91–CR–1235, 91–CR–
1235(S), 94–CR–618.**

United States District Court,
E.D. New York.

April 21, 1999.

Debra D. Newman, U.S. Attorney's Office, Garden City, NY, for U.S.

Jeffrey Hoffman, New York City, for Howard Crash.

*MEMORANDUM AND ORDER*

PLATT, District Judge.

In a letter dated April 13, 1999, sent to this Court by fax and Federal Express and received on April 14, 1999, defendant's attorney, Gail E. Laser, Esq., asked that this Court reconsider its decision on April 9, 1999, denying defendant permission to travel to Italy from April 14 through 24, 1999.

According to defendant's Presentence Report in this Court:

On July 1, 1994, the defendant pleaded guilty to both counts of an information (94–CR–271) originating in the Southern District of Florida and transferred to the Eastern District of New York pursuant to the provisions of Rule 20 (Federal Rules of Criminal Procedure). Count 1 charges that between February 21, 1991 and May 11, 1991 he conspired with others to make extortionate extensions of credit, in violation of 18 USC 892. Count 2 charges that from February, 1989 through November, 1990, he conspired with others to commit mail fraud, in violation of 18 USC 371. He also pleaded guilty to a one count indictment (91–Cr–1235) in the Eastern District of New York charging that between September 1985 and September 1991, he conspired with others to travel in interstate commerce in aid of racketeering, in violation of 18 USC 371; and to a one count superseding information (91–CR–1235(S)) charging that between January 1986 and September 1991, he conspired to defraud the United States by impairing the Internal Revenue Service in the collection of income taxes, in violation of 18 USC 371.

Pursuant to the Government's request and in light of his extensive cooperation, defendant was sentenced to five years probation on Count 1 of 91–CR–1235 and supplemental Count 1 of 91–CR–1235(S), and to five years probation on Counts 1 and 2 of 94–CR–618 and ordered to pay restitution of $400,000 in monthly installments, using 25% of his gross income for the five year period and until the total restitution is made. Without the cooperation letter of the Government, the Guidelines provide for a sentencing range of between 41 and 51 months, a fairly clear and convincing statement of the seriousness of the offenses to which the defendant pled guilty. Defendant's five-year probationary period began on October 9, 1998.

Within six months, i.e., on March 24, 1999, defendant petitioned this Court for permission to travel to Great Britain the

very next day to "attend a memorial service for his cousin who recently died." With considerable reluctance, in view of the enormous amount of money defendant owes to the victims of his crimes, this Court granted him permission on March 25, 1999.

Now, less than a month later, defendant has made yet another request for permission to travel internationally. In a report submitted in the context of this latest travel request, defendant's Connecticut Probation Officer stated as follows:

> Mr. Crash is requesting additional approval from the Court to travel to Italy from April 14th to the 24th. This is a combination pleasure and business trip. Mr. Crash's daughter is a senior at Cornell University, and is one of six students selected to participate in the Cornell/Rome program. She has been attending the university's program in Rome since December 1998 and will not complete the program until June 1999. It was Mr. Crash's hope to spend his daughter's birthday with her, a family tradition they have maintained through the years (Mr. Crash's daughter is an only child, and her mother succumbed to leukemia when she was quite young).
>
> Mr. Crash' second wife, and stepmother to his daughter, would pay for the entire trip. As an American Express Platinum Card member, she is entitled to a "2 for 1" ticket deal on Air Italia. Round trip tickets for both she and Mr. Crash would cost $2,500, which is ordinarily the price for only one round-trip ticket. However, she has agreed to contribute the $2,500 which they saved on the purchase price towards Mr. Crash's restitu-

tion account. (In the event that Your Honor denies Mr. Crash's travel request, his wife would still go to Italy without him to spend time with his daughter who has not seen any family for several months now.)

Mrs. Crash owns an antiques store and interior design firm. She started this business years before meeting the probationer, having a long history of going to Europe in search of inventory. Mr. Crash is now employed by his wife as the sales manager at her antiques store for which he is paid $25,000 per annum. The two would also use their time in Italy to scout for business merchandise to be used by her firms.

It was quite clear from the wording of this application that the prime purpose of Mr. Crash's proposed trip to Italy was to see his daughter who is a senior in the Cornell/Rome Program and "spend his daughter's birthday with her, a family tradition they have maintained through the years," with an incidental purpose as "sales manager" of his wife's business "to scout for business merchandise" in Italy.

With this by way of background, defendant's attorney now files a letter received by this Court on April 14th to reconsider its earlier position and permit her client to travel to Italy on the very same day, i.e., April 14th "for business purposes—as an employee of a distributor of antiques, he is going on a buying trip."

One of the Court of Appeals two conditions under which a "restriction on a petitioner's right to travel" may be imposed[1] is the "protection of the public," who in this case are defendant's victims who have been swindled of their life savings to the

---

1. The Guideline's commentary with respect to "Probation" says that:

   Probation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes

   by the defendant. (*U.S. Sentencing Guidelines Manuel* § 5B1.1 (1988)).

   This seems to say that Probation may be used as "an alternative to incarceration" if the terms and conditions thereof "meet fully" the statutory purposes of (i) promoting respect for the law, (ii) providing just punishment for the offense, (iii) achieving general deterrence, and (iv) protecting the public, i.e., not two but four or five purposes.

extent of some $400,000. Defense counsel already has advised the Probation Department that defendant "is likely to be posing similar requests to the Court in the future." This Court fails to see how these requests for periodic international travel for personal reasons (with additional purposes added thereto in an attempt to fall within *United States v. Porotsky*, 105 F.3d 69 (2d Cir.1997)) would do anything but impair his monthly payments to victims (i.e., which would not protect the public) or would assist in the "rehabilitation" of defendant who gives every appearance of now attempting to mislead the Court as to the true purpose of his proposals.

For the foregoing reasons, this Court adheres to its original decision and denies defendant's petition to travel to Italy at this time.

SO ORDERED.